BRADLEY S. BRYANT, administrator with the will annexed, *vs.*
LOUISA M. FLANDERS & others.

Suffolk.    January 26, 27, 1909. — March 1, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Devise and Legacy.    Words,* "Living."

A testator by his will, after giving his wife the use, income and improvement of
all his estate during her life, with the right to expend any part of the capital,
if she found it necessary for her welfare, devised and bequeathed, upon the
death of his wife, all the rest and residue of his estate, including the proceeds
of any estate sold by his executors and not expended by his wife, as follows :
To each of four of his sisters named the sum of $5,000 and to a fifth sister, also
named, who was a widow, the sum of $8,000, and then added "the balance
thereof to be distributed and divided equally among my living sisters and the
brothers of my said wife," naming the three brothers of his wife.   At the time
the will was made and also at the time of the testator's death all the five sisters
of the testator named in the will and all of the three brothers of the testator's
wife were living.   The testator had had another sister, who had died many
years before, when she was about four years of age.   After the testator's death
and before the death of his widow three of the five sisters of the testator named
in the will died and also one of the three brothers of the wife of the testator
died.   *Held,* that the pecuniary legacies in fixed amounts left to the testator's
sisters by name vested on the death of the testator subject to the contingency
that, if all the capital of the estate was expended by the testator's widow for her
welfare, there would be no rest and residue from which they could be paid; and
that such of these legacies as were left to the three sisters of the testator who
died before his widow passed to their respective executors or administrators.
*Held, also,* that the word "living" in the following clause qualified only the
word "sisters" and not also the word "brothers," and that the "living sisters"
of the testator meant those sisters who were living at the time of the making
of the will or the time of the testator's death, and not those sisters who were
living at the time of the death of the testator's widow.

MORTON, J.   This is a bill in equity by the administrator
with the will annexed of the estate not already adminis-
tered of one Albert E. Brown, late of Boston, for instructions
in regard to the construction of the fourth clause of the will.
The case was reserved by a single justice of this court for our
determination.

By the third clause of the will the testator gave to his wife,
Laura A. Brown, the net income and improvement of all his
estate during her life with the right, if she found it necessary for

her maintenance, support or welfare, to spend and consume any part of the principal or capital of his estate, and gave the executors power to sell real or personal property for that purpose. The clause in question is as follows : " Fourth : — Upon the decease of my said wife, I give, devise and bequeath all the rest, residue and remainder of my estate, including the proceeds of any estate sold by my executors and not by her expended as aforesaid, in manner as follows, viz : — To Charlotte A. Moore, wife of S. B. Moore of Lockport, New York the sum of Five Thousand Dollars To Louisa M. Flanders wife of Albert Flanders of Cambria New York the sum of Five Thousand Dollars. To Adaline F. Swift wife of E. B. Swift of said Cambria the sum of Five Thousand Dollars. To Harriott J. James wife of Remington James of said Lockport the sum of Five Thousand Dollars. To Ellen F. Aldrich of Cleveland Ohio, widow, the sum of Eight Thousand Dollars. · And the balance thereof to be distributed and divided equally among my living sisters and the brothers of my said wife, viz : — Thomas G. Bryant of Brookline, Mass., Dexter Bryant of Melrose, Mass., and Bradley S. Bryant of said Boston." The testator died in November, 1887, leaving a widow who died on December 16, 1907. The will was executed on April 26, 1886. The five persons named above, to whom pecuniary legacies in fixed amounts were given, were the sisters of the testator. At the time of the making of the will the five sisters named in it were living and were all the sisters that the testator had then living. There had been another sister who died in 1830 when she was about four and the testator was about six years old. The brothers of the wife named in the will were also alive when the will was made and were all the brothers that she had. After the testator's death and before the death of the life tenant three of the testator's sisters and one of the wife's brothers died. It is agreed that the amount remaining to be administered is more than the amount of the specific pecuniary legacies to the sisters.

The questions are whether the pecuniary legacies of fixed amounts to the deceased sisters have lapsed, and to whom does " the balance " go in view of the death before that of the life tenant of some of those named in the will as distributees.

1. It is plain, we think, that the pecuniary legacies to the

sisters took effect and vested in them at the death of the testator, and upon their decease or the decease of any of them passed to their respective executors or administrators. The legacies were to them *nominatim* and not as a class, and were, of course, subject to the contingency that there might be no rest and residue from which they could be paid, or a rest and residue which would not admit of their being paid in full by reason of the provision in the will that "the principal or capital" of the estate could be used if necessary for "the maintenance, support or welfare" of his wife.

2. The remaining question is more difficult. The difficulty arises from the use of the word "living," and the question is whether it means sisters living at the date of the will or of the testator's death, and which is immaterial so far as the result in this case is concerned, or whether it means sisters living at the death of the life tenant. The word "living" qualifies, we think, the word "sisters" and not the word "brothers." This is the grammatical construction and we see no reason for departing from it. We also think that the balance, if any, of the rest and residue remaining for final distribution at the death of the life tenant and after the payment of the pecuniary legacies must be regarded as having vested at the testator's death in the sisters and brothers as tenants in common subject to be divested in favor of the sisters who survive and of the brothers, if "living sisters" is construed to mean sisters living at the life tenant's death. This is in accordance with the general rule that remainders and other estates will be deemed to have been intended to vest at the testator's death rather than on the happening of some future event, unless a contrary purpose is clearly manifested. *Minot* v. *Purrington,* 190 Mass. 336. *Crapo* v. *Price,* 190 Mass. 317. In the case before us the language of the will imports a present gift, though the enjoyment of it is postponed till the death of the testator's wife. It follows that, so far as the deceased brother is concerned, his share will pass to his legal representatives.

And, on the whole, we think that by "living sisters" the testator meant either those living at his death or at the date of the will, and not those living at the death of his wife. The testator nowhere manifests an intention to benefit his wife's

brothers and their issue at the expense of his sisters and their issue, which would or might be the effect of construing the word " living " as meaning sisters living at the life tenant's death. On the contrary he prefers his sisters by giving them legacies to the amount of $28,000 out of the rest and residue, and then provides that the balance shall be distributed " equally " amongst his wife's brothers, naming them, and his sisters, whom he describes as his " living sisters," and to each of whom he has just given by name a pecuniary legacy. The word " living" as ordinarily used, without anything in the context to qualify its meaning, signifies such as are living at the time of speaking or writing, in contradistinction to those who are not. And it seems to us more reasonable to infer that the testator used it in such a sense and as descriptive, as a group, of the sisters to whom he had just given specific pecuniary legacies, than to construe it as meaning those who should survive his wife. There seems to be nothing in the scheme of the will or in the attendant circumstances to fairly require or warrant such a construction. The fact that the testator had a sister who died many years ago may perhaps tend slightly to confirm our view of the sense in which the testator used the word " living." The result is that we think that the shares of the deceased sisters vested in them on the death of the testator, and on their death passed to their legal representatives.

*Decree accordingly.*

*C. M. Hemenway,* for the administrator, stated the case.

*G. Hoague,* for Louisa M. Flanders and Harriott J. James.

*E. G. McInnes,* for William C. Moore, administrator.

*L. M. Friedman,* (*P. A. Atherton* with him,) for Josephine C. Van Dusen and Grace L. Aldrich, administratrices of the estate of Ellen F. Aldrich.

*G. P. Bryant,* for Dexter Bryant and D. A. Bryant, assignee.

*W. H. H. Emmons,* administrator of the estate of Adaline F. Swift.

*S. M. Child,* public administrator of the estate of Thomas G. Bryant.