FRANCIS R. BOYD & another, trustees, vs. CALVIN P. BARTLETT, administrator, & others.

Bristol.   October 24, 1949. — January 5, 1950.

Present: QUA, C.J., RONAN, SPALDING, & COUNIHAN, JJ.

*Devise and Legacy*, Intestacy, To individuals or class, Time of vesting, Survivorship.  *Words*, "Vest and be paid over."

Respecting provisions of a will that for twenty-one years after the death of the testatrix's husband, life beneficiary of a trust, capital thereof should be "held for the equal benefit of the children cf" a niece and of a nephew of the testatrix, "per capita and not per stirpes . . . the net income thereof to be paid over in equal shares to the said children . . . until they shall respectively reach the age of twenty-five years when the principal sum of the share cf the child reaching that age shall be paid over to him or her.  Provided, however, that if at the end cf the period cf twenty-one years . . . all of such children shall not have reached the age of twenty-five years, the principal sums shall at that time vest and be paid over to the children then living and entitled thereto or to the issue of any deceased child by right of representation," it was held that each child took a vested interest in a pro rata share of the capital at the time of the husband's death, and that, upon the death cf one of the children intestate, without issue and under the age of twenty-five years within twenty-one years after the husband's death, there was no intestacy as to that child's share, and it did not pass to the cther children but should be paid to that child's personal representative.

PETITION for instructions, filed in the Probate Court for the county of Bristol on November 30, 1948.

The case was heard by *Fuller*, J., who entered a decree that the petitioners "distribute to Calvin P. Bartlett, administrator of the estate of said Thompson Newbury, Jr., the one half of the principal of the trust property now held by them under the provisions of paragraph b of article 8 of said will which would have been distributable to the said Thompson Newbury, Jr., when he reached the age of twenty-five years, together with the income attributable

to said one half of the principal since the death of said Thompson Newbury, Jr."

*R. M. Robinson*, stated the case.

*R. I. Hunneman*, for the respondents Bayles and others.

*G. E. Bruen*, for the respondent Callahan.

*C. P. Bartlett*, (*R. H. Lovell* with him,) for the respondent Bartlett, administrator.

*L. I. Phillips*, for the respondents Sylvia Newbury and others.

QUA, C.J. This is a petition for instructions by the trustees under the will of Sarah W. Lovering, late of Taunton, as to the proper construction of subparagraph b of article 8 of the will.

Mrs. Lovering died in 1937. By article 8 she left the residue of her estate for the benefit of her husband, Edward Lovering, during his life, and in the lettered subparagraphs of that article she provided for the disposition of specified fractional parts of so much of the trust property as should remain at his death. We are concerned only with subparagraph b, which reads as follows: "b. One-sixth part thereof is to be held for the equal benefit of the children of my deceased niece, Rachel C. Brown, and the children of my nephew, Thompson Newbury, per capita and not per stirpes, for the period not exceeding twenty-one (21) years after the decease of the said Edward Lovering, the net income thereof to be paid over in equal shares to the said children or to some proper person for their use and benefit until they shall respectively reach the age of twenty-five (25) years when the principal sum of the share of the child reaching that age shall be paid over to him or her. Provided, however, that if at the end of the period of twenty-one (21) years above limited all of such children shall not have reached the age of twenty-five (25) years, the principal sums shall at that time vest and be paid over to the children then living and entitled thereto or to the issue of any deceased child by right of representation."

Edward Lovering died in 1941. Both Rachel C. Brown and Thompson Newbury were then dead. At the death of

the testatrix and at the death of Edward Lovering there were living three children of Rachel C. Brown. At the death of Edward Lovering all three were over twenty-five years of age. There were also living at the death of the testatrix and at the death of Edward Lovering two children of Thompson Newbury, Thompson Newbury, Junior, and Sylvia Newbury, both then under twenty-five years of age. In accordance with the will one sixth of the remaining principal of the trust property was set aside to be administered under subparagraph b. Of that sum the trustees paid one fifth to each of the children of Rachel C. Brown, but as the children of Thompson Newbury were each under twenty-five years of age, the two fifths constituting their interests were retained by the trustees and the income therefrom was paid one half to Thompson Newbury, Junior, or his guardian and the other half to the guardian of Sylvia Newbury until July, 1948, when Thompson Newbury, Junior, died intestate and without issue, not having reached the age of twenty-five years, and never having received any of the principal of the fund.

The question is what disposition should now be made of the one fifth of the fund the income of which was paid to Thompson Newbury, Junior, before his death. The administrator of Thompson Newbury, Junior, claims that his intestate had a vested interest in that one fifth of the fund and that it, with its accumulations, should now be paid to the administrator. Sylvia Newbury and certain other parties join in this contention. The three Brown children, all of whom are still living, claim that this one fifth of the fund, with its accumulations, should now be equally divided among them and Sylvia Newbury, these being the four survivors of the original five children. The second wife of Edward Lovering, who became his widow upon his death in 1941, claims that because of the second sentence of subparagraph b the vesting of the principal of the share of each of the five children was contingent upon his or her attaining the age of twenty-five years, and that as Thompson Newbury, Junior, did not attain that age, there was an intestacy

as to his one fifth which passed to Edward Lovering and came to her through his will.

In our opinion the contention that there was an intestacy as to the share of Thompson Newbury, Junior, cannot prevail. In addition to the general reluctance of the court to discover an intestacy as to some particular interest lurking in the general provisions of a will, subparagraph b seems to us to demonstrate in itself an intention to make a complete testamentary disposition of the one sixth part of the residue of the testatrix's estate to which the subparagraph relates. As will more fully appear, the provision for payment of the shares of a child upon reaching the age of twenty-five affected only the time of payment and did not make the vesting of the child's interest conditional upon his attaining that age. *Eldridge v. Eldridge,* 9 Cush. 516. *Wardwell* v. *Hale,* 161 Mass. 396. *Parkhurst* v. *Jonsberg,* 324 Mass. 66, 68.

It is apparent that subparagraph b contains no express provision applicable in the event that one of the children should die without issue after the death of Edward Lovering and before that child should reach the age of twenty-five — the event that happened in the instance of Thompson Newbury, Junior. Yet we think that the intention of the testatrix, even in this event, can be discerned with reasonable certainty. She was making a provision for the children of her niece Rachel C. Brown and of her nephew Thompson Newbury, the elder. All of these children stood in the same relationship to her, and so she grouped them together in order that they might have "equal benefit" in "equal shares" per capita. But in spite of this grouping the testatrix appears to have thought of the fund as divided into as many separate "principal sums" as there were children entitled. She speaks of "the principal sum of the share of the child" reaching twenty-five and provides for payment of each such "principal sum" to each such child and for the payment at the end of the period of twenty-one years of all such "principal sums" to such children as shall not then have reached twenty-five and so shall not already have re-

ceived their "principal sums," or to the issue of any deceased child by representation. The paragraph contains no cross remainders and no words suggesting that in case of the death of one of the children those surviving should in any way become entitled to the benefit of the "principal sum" of the deceased child. The intent would seem to have been that the receipt by each child of his "principal sum" upon his reaching twenty-five should end forever all participation in the fund by him. In short, it seems to us that the testatrix intended that, at least by the time of the death of Edward Lovering, each child should take a vested interest in what she called a "principal sum," representing a pro rata . share in the fund; and that that "principal sum" should continue as a separate interest distinct from the other interests until paid and should not in the case of the death of the holder lose its theoretical identity and go to swell the shares of the survivors. See *Thompson* v. *Martin*, 281 Mass. 41, 45–46; *Shattuck* v. *Wall*, 174 Mass. 167; *Lyons* v. *Lyons*, 313 Mass. 550. The provision for issue also tends to show that the principle of survivorship is not applicable. *Cotter* v. *Cotter*, 293 Mass. 500, 504.

The first sentence of subparagraph b is apt and adequate to create a vested interest in each child, although actual possession of the principal is to be delayed until years of discretion are attained. The second sentence does not prevent this result. In the part reading ". . . the principal sums shall at that time vest and be paid over to the children then living and entitled thereto . . ." the word "vest" is not, we think, used in a technical sense as indicating that the several interests of the children had theretofore been contingent in the sense that when one child died without issue his share went to the survivors. We think that the words "vest and be paid over" are to be read together and refer simply to the vesting in possession and enjoyment. The rule against perpetuities may have been in the mind of the draftsman as a reason for extra caution, but that does not suffice to convince us that the interests of the children were originally contingent. The words "shall . . . be paid

over to the children then living and entitled thereto" do not require a division of the "principal sum" of a deceased child among the living children. They mean only that the "principal sums" of living children who have not yet received them and are still "entitled thereto" shall be paid to them. This preserves the testatrix's scheme of dividing the fund into as many "principal sums" as there are children. Doubtless by reason of the last clause of this second sentence the vested interest of Thompson Newbury, Junior, would have been divested in favor of his issue, if he had left issue; but he left none. *Gibbens* v. *Gibbens*, 140 Mass. 102, 105. *Crapo* v. *Price*, 190 Mass. 317, 319. *Cotter* v. *Cotter*, 293 Mass. 500, 503–504.

Since there is no longer any reason for withholding the vested interest of Thompson Newbury, Junior, for his protection, payment is accelerated and may now be made to his administrator, together with the accumulation of income on his share. *Eldridge* v. *Eldridge*, 9 Cush. 516. Restatement: Property, § 258, comment n.

The decree of the Probate Court is affirmed. Costs and expenses of this appeal are to be in the discretion of that court.                                          *So ordered.*