OLD COLONY TRUST COMPANY, trustee, *vs.* MAY C. CLEMONS & others.

Suffolk. December 10, 1954. — April 22, 1955.

Present: QUA, C.J., RONAN, SPALDING, & WILLIAMS, JJ.

*Trust*, Construction. *Devise and Legacy*, Time of vesting, Remainder.

Under provisions of an indenture of trust reserving to the settlor power to revoke it or to change the beneficiaries and their interests and directing that on his death the income should be paid to his wife for her life and that, if she should not be living at his death or, if then living, on her death, the trustee should "pay over" the principal of

the trust in equal shares to the settlor's "nieces and nephews . . . and to the issue of any deceased niece or nephew by right of representation," the date of the settlor's death, not the date of the establishment of the trust nor the date of his wife's death in case she survived him, was the time of vesting of the remainder interests in the principal and for determination of the nephews and nieces and issue of deceased nephews and nieces entitled to receive the principal in distribution at the death of the wife.

PETITION for instructions, filed in the Probate Court for the county of Suffolk on January 13, 1954.

The case was heard by *Mahoney*, J.

*Vernon Mason*, stated the case.

*Harold S. Davis*, (*Casimir de Rham, Jr.*, with him,) for Helen K. McCleece, executrix.

*Ephraim Martin*, for Donald C. Smith and others.

WILLIAMS, J. This is a petition for instructions by Old Colony Trust Company, trustee under an indenture of trust executed by the donor, Alfred W. Smith, and by the said trustee on August 31, 1923. After reserving to himself in paragraph "Fourth" an unlimited right to revoke and cancel the deed of trust and to change the beneficiaries and their respective interests in the trust, the donor provided as follows: "Second: Upon my decease the Trustee, subject to changes made agreeably to the provisions of paragraph 'Fourth' shall pay over said net income to my wife, Lucy M. Smith, for and during her natural life. Third: In the event, however, that my said wife shall not be living at the time of my decease, or if living at my decease, after the death of my said wife, the said Trustee shall pay over, free and clear of all trusts, the principal sum of said trust estate to my nieces and nephews in equal portions, share and share alike, and to the issue of any deceased niece or nephew by right of representation. And I include in the list of said nieces and nephews my step-niece, Miss Nellie Clemons, now living in Passaic, New Jersey, wishing her and her issue to share in like manner as my own nieces and nephews."

When this instrument was executed there were living fourteen nephews and nieces, including the said step-niece, and no issue of deceased nephews and nieces. At the donor's

death on December 11, 1934, there were living thirteen nephews and nieces, including the said step-niece, and no issue of deceased nephews and nieces. On September 28, 1953, the date of the death of the donor's wife, Lucy M. Smith, there were living seven nephews and nieces, and issue of deceased nephews and nieces.

The time having arrived for distribution of the principal of the trust the trustee asks to be instructed "whether, by the provisions of said paragraph Third of said declaration of trust, the nieces and nephews of the donor, including his step-niece Nellie Clemons, and issue of deceased nieces and nephews of the donor by right of representation, to whom the principal of said trust estate is to be paid after the death of the donor's wife, Lucy M. Smith, are to be determined: (A) as of August 31, 1923, the date of said declaration of trust, so that said principal shall be paid in fourteen equal shares to the fourteen nieces and nephews of the donor, including his step-niece Nellie Clemons, designated in paragraph 5 of this petition, the share of any said niece or nephew who has died since August 31, 1923, being paid to the estate of said deceased niece or nephew;ʾ or (B) as of December 11, 1934, the date of the death of the donor, Alfred W. Smith, so that said principal shall be paid in thirteen equal shares to the thirteen nieces and nephews of the donor, including his step-niece Nellie Clemons, designated in paragraph 7 of this petition, the share of any niece or nephew who has died since December 11, 1934, being paid to the estate of said deceased niece or nephew; or (C) as of September 28, 1953, the date of the death of the donor's wife, Lucy M. Smith, so that said principal shall be paid in ten equal shares as follows: one share to each of the seven nieces and nephews of the donor, designated in paragraph 15 of the petition, who were living on September 28, 1953, and survived the donor's wife, and one share by right of representation to the issue designated in said paragraph 15, who were living on September 28, 1953, and survived the donor's wife, of the three nieces and nephews of the donor who died prior to September 28, 1953, the share of any said niece or

nephew or of any said issue of a deceased niece or nephew, who has died since September 28, 1953, being paid to his or her estate; or (D) as of some other date with distribution in some different number of shares to certain of the respondents or to certain of the respondents and/or other persons."

The respondents are the living nephews and nieces, the issue of deceased nephews and nieces, and persons now entitled to the estate of the deceased nephews and nieces. The case was heard in the Probate Court upon the petition and the respective answers of the respondents who answered, which admitted the truth of the allegations of the petition and set up no additional facts. As to the respondents who did not answer the petition was taken for confessed.

A final decree was entered instructing the trustee "that the nieces and nephews of the donor, Alfred W. Smith, and issue of deceased nieces and nephews of said donor, are to be determined as of September 28, 1953, the date of death of the donor's wife, Lucy M. Smith; that said trustee is to divide the principal of the trust estate held by it under said declaration of trust, and accumulated and unpaid income thereon, into ten equal parts and to pay one such part to each of the nieces and nephews of the donor who was living on September 28, 1953, the date of death of the donor's wife, Lucy M. Smith, and one part, by right of representation, to the issue living on said September 28, 1953, of nieces and nephews of the donor who predeceased the donor's said wife."

From this decree John J. McCleece, who was the husband of Lily A. McCleece, a niece of the donor who died on February 27, 1937, and was the only person interested in her estate, appealed. Since the appeal John J. McCleece has died, and Helen K. McCleece, as executrix of his will, has entered her appearance. Although the donor was a resident of Florida the parties have assumed that the construction of the instrument in question is governed by the laws of this Commonwealth, and as no suggestion has been made that the law of Florida is different from that of Massachu-

setts (see *Murphy* v. *Brilliant Co.* 323 Mass. 526, 529) the case is to be decided according to Massachusetts law.

The correctness of the instructions depends upon the determination of the time or times when the respective remainders, established by the indenture, vested. The instrument has many of the characteristics of a will and we think should be construed in accordance with the rules applicable to the construction of wills. In view of the right reserved by the donor to revoke and revise the provisions of his trust, it seems clear that he did not intend the remainder interests to vest before his death. The question then to be decided is whether they did vest upon his death or not until the death of his widow, the life tenant. It is settled that the early vesting of remainders is to be preferred. See *Lyons* v. *Lyons*, 313 Mass. 550; *Barker* v. *Monks*, 315 Mass. 620, 624. On the facts in those cases which essentially were similar to those in the instant case, it was held, after full consideration of the authorities, that the remainders vested upon the death of the testator. We see nothing here to justify a different decision. Although the persons named as entitled to the remainders were not lineal descendants of the donor, as in the cases cited, they were blood relatives except the step-niece, whom the donor treated as if she was a relative in like degree, and the preferential rule, above referred to, is applicable. See *Boston Safe Deposit & Trust Co.* v. *Abbott*, 242 Mass. 92.

The arguments advanced by the appellees do not lead us to believe that the donor intended the remainders should vest only upon the death of his wife. The fact that, if his wife predeceased him, vesting would necessarily synchronize with distribution has little, if any, tendency to show that if she survived him he intended that the time of distribution should control the time of vesting. The provision that upon her death the trustee was directed to "pay over" the trust funds was held in *Barker* v. *Monks*, 315 Mass. 620, 625, to be of slight value in fixing the time of vesting. These words are commonly used to give formal authority to trustees to distribute funds held in trust when a trust has terminated

and rarely indicate any other intent. It is urged that the use of the conjunctive in the phrase referring to nephews and nieces "and" their issue shows an intent to establish a class, the members of which could only be determined at the life tenant's death. It was decided, however, in the *Lyons* case that a provision for the children of a deceased child to take by right of representation did not make the gift to the child contingent. See also *Boston Safe Deposit & Trust Co.* v. *Abbott*, 242 Mass. 92. In *Crapo* v. *Price*, 190 Mass. 317, and *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass. 255, on which the appellees rely, there were additional factors not present here. It is also contended that by early vesting the shares of remaindermen who died might go to persons who were not blood relatives of the donor. This is a possibility where there is any interval between the times of vesting and distribution. The contention suggests a reason for doubting the wisdom of the rule for preferring early vesting but not a reason for denying the applicability of the rule in the present case.

In our opinion the interests in remainder vested upon the death of the donor on December 11, 1934. The final decree is reversed and a new final decree is to be entered instructing the trustee that the principal of the trust is to be distributed to the persons and estates described in the request lettered (B).                        *So ordered.*