WILLIAM DE FORD, trustee, *vs.* LORING W. COLEMAN
& others.

Suffolk. December 10, 1964. — January 4, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Devise and Legacy,* Remainder, Vested or contingent interest.

Certain provisions of a will, construed in the light of the entire will and
pertinent authorities, directing payment of the income of a share in a
trust fund established by the will to a daughter of the testator during
her life and after her death to her children "until they attain the age
of twenty-five years and to each child his or her share of . . . [the
principal upon attaining that age], the issue of any deceased child
taking the parent's share," gave each of the daughter's children a vested
remainder interest in the principal of the daughter's share of the trust
fund at the testator's death, subject to being divested in the event, which
occurred as to each child of the daughter, of the child's predeceasing
the daughter after attaining the age of twenty-five years and leaving
issue surviving the daughter; and upon the daughter's death the issue
of each child of hers, not the child's personal representative, became
entitled to direct distribution of the principal formerly held for the
child.

PETITION filed in the Probate Court for the county of Suf-
folk on February 25, 1963, for distribution of a trust fund
established under the will of Henry Bigelow Williams, late
of Boston.

The respondent Coleman appealed from a decree entered
by *Keville, J.*

*Marion R. Fremont-Smith* stated the case.

*John E. Rogerson* (*Ronald Garmey* with him) for Loring
W. Coleman.

*Norman Burwen* for Jonathan R. Snelling & others.

CUTTER, J. The testator died in 1912, survived by his
widow (who died in 1923), a daughter, Mrs. Fessenden
(died 1962), and two stepdaughters (Mrs. Whitehouse, died
1930, and Mrs. Parker, died 1942). He gave the residue of
his estate to trustees to hold five-sevenths of the principal

for Mrs. Fessenden and one-seventh for each of his step-daughters (to whom he referred as daughters).   Subject to the payment of one-third of the income to his widow for her life, the balance of the income (and all of it after the widow's death) was to be paid to Mrs. Fessenden, Mrs. Whitehouse, and Mrs. Parker in the proportions, five-sevenths, one-seventh, and one-seventh, respectively.

The remainder interests were then dealt with as follows: "After the deaths of my . . . daughters, their portions of the income shall be paid to their children in equal shares until they attain the age of twenty-five years and to each child his or her share of said principal sum when he or she shall attain the age of twenty-five years, *the issue of any deceased child taking the parent's share.*   If any child shall die before attaining . . . twenty-five . . . leaving no issue, his or her share shall be divided among the survivors of that family.   If my daughter Mrs. Whitehouse shall die leaving no issue, or if all her children shall die before attaining . . . twenty-five . . . leaving no issue, their shares of the income and of the principal shall be paid to my daughter Mrs. Parker and her issue in the manner set forth in the preceding paragraphs. . . .   [Then follows a similar provision with respect to Mrs. Parker's share for the benefit of Mrs. Whitehouse and her issue.]   If both Mrs. Whitehouse and Mrs. Parker shall die leaving no issue, or if all their children shall die before attaining . . . twenty-five . . . leaving no issue, then their shares of the income and of the principal shall be paid to Mrs. Fessenden and her issue in the manner set forth in the preceding paragraphs. If my daughter Mrs. Fessenden shall die before her husband . . . leaving no issue, her share of the income shall be paid to . . . [him] during his life, and after his death her share of my property shall be divided in accordance with the provisions of the next succeeding paragraph; if Mrs. Fessenden shall die before her said husband, leaving no issue, or if all her children shall die before attaining . . . twenty-five . . . leaving no issue, her share of my property shall be divided" among certain charities (emphasis supplied).

De Ford v. Coleman.

The present petition for distribution[1] relates to the five-sevenths share of principal from which Mrs. Fessenden had been receiving the income prior to her death in 1962. It was heard upon a statement of agreed facts, which discloses (a) that Mrs. Fessenden had two children, Mrs. White and Henry B. W. Snelling, both of whom died before Mrs. Fessenden; (b) that Mrs. White was survived by her son Loring Coleman, born in 1918,[2] and (c) that Henry Snelling was survived by three sons, born in 1929, 1932, and 1937. Loring Coleman and all Henry Snelling's children were over twenty-five at Mrs. Fessenden's death.

The decree of the Probate Court ordered that one-half of the trust fund be paid to the administrators with the will annexed of Henry Snelling, and that the other half be paid to the administrator of Mrs. White's estate. Loring Coleman appealed.

1. Each of the testator's two grandchildren (Mrs. White and Henry Snelling) took at the testator's death, a vested remainder interest in one-half of the trust fund. *Cotter* v. *Cotter*, 293 Mass. 500, 503–504; *Lyons* v. *Lyons*, 313 Mass. 550, 552; *Old Colony Trust Co.* v. *Clemons*, 332 Mass. 535, 539–540. The provision that grandchildren should take their respective shares of the "principal . . . when he or she shall attain . . . twenty-five . . . the issue of any deceased child taking the parent's share," did not prevent vesting of Mrs. White's and Henry Snelling's shares at the testator's death, either (a) because of the words "the issue of any deceased child taking the parent's share" (see the cases already cited), or (b) because of the provision postponing actual distribution of principal to age twenty-five.

---

[1] After Mrs. Parker died in 1942, the trustees (in 1943) sought instructions from the Probate Court. The decree instructed the trustees, in effect, that there had been no violation of the rule against perpetuities and that the provisions of the will, "that after the deaths of the daughters (including stepdaughters) their portions of the principal shall be paid to their children on reaching . . . twenty-five," were valid. The children of Mrs. Whitehouse and Mrs. Parker, then both deceased, were then all over twenty-five. Distribution to them, respectively, was directed. Their shares, accordingly, are not here involved.

[2] Another son of Mrs. White died in 1936 at the age of thirteen.

See *Wardwell* v. *Hale,* 161 Mass. 396, 399; *Boyd* v. *Bartlett,* 325 Mass. 206, 209; Restatement: Property, § 258; Newhall, Settlement of Estates (4th ed.) § 356. Loring Coleman contends, however, that the words "the issue of any deceased child taking the parent's share" operated to divest the respective vested shares of the testator's grandchildren, Mrs. White and Henry Snelling, when they died before the testator's daughter, Mrs. Fessenden, and after each of these two grandchildren had attained the age of twenty-five, each leaving issue living at Mrs. Fessenden's death.

2.   Our primary duty, of course, is to ascertain the testator's intention from the whole instrument, attributing due weight to all its language. See *Wheeler* v. *Kennard,* 344 Mass. 466, 469. Examination of the will shows the following intentions. (1) Each daughter or stepdaughter (subject to the rights of the testator's widow) was to have the whole beneficial income interest in her share during her life. Her children (and more remote issue) were to be paid no income or principal in possession and enjoyment until after her death. (2) Although (as has been stated) under our rules of construction each grandchild of the testator took at the testator's death a vested remainder interest, any such grandchild by an express provision of the will, would lose this interest[3] if the grandchild should die before reaching twenty-five leaving no issue. In that event, his or her share would go to the "survivors" of such grandchild's mother's issue. Such grandchild's estate, by an express provision of the will, would also lose the share if his or her mother died leaving no issue, for, as to each share, there was a gift over in that event. (3) There was no provision divesting a grandchild's share (a) if such grandchild died, either leaving or not leaving issue, after his or her mother and after reaching the age of twenty-five, or (b) if such grandchild

---

[3] We assume that the vested remainders of Mrs. White and Henry Snelling would have opened to let in any children of Mrs. Fessenden born after the testator's death, if there had been any, thus partly divesting the vested shares of each of her older two children. See *Old Colony Trust Co.* v. *Brown,* 287 Mass. 177, 179–180; *Barker* v. *Monks,* 315 Mass. 620, 624; *B. M. C. Durfee Trust Co.* v. *Taylor,* 325 Mass. 201, 204–205.

died leaving no issue before his or her mother but after reaching the age of twenty-five and the mother died leaving issue. (4) No provision of the will in express terms would transfer a share originally held for the line of one daughter or stepdaughter of the testator to another such line, or to any person other than issue in that line, so long as issue remained living in the original line. There is thus apparent from the will as a whole some indication of a desire to confine the benefits of each daughter's or stepdaughter's share of the trust to her issue as long as possible, although the testator seems to have been content to permit the share of a grandchild, who reached twenty-five during his mother's life and died before her leaving no issue, to go to such grandchild's estate, if the mother did not subsequently die leaving no issue. See *Lyons* v. *Lyons,* 313 Mass. 550, 551–552 (vested share of daughter who died leaving no issue before life beneficiary went to her estate); *Boyd* v. *Bartlett,* 325 Mass. 206, 210–211; Restatement: Property, § 254; Am. Law of Property, § 21.23. See also *Warner* v. *Warner,* 237 F. 2d 561, 563 (Ct. App. D. C.). Accordingly, with this somewhat general and limited indication of the testator's intention in mind, we must construe the words "the issue of any deceased child taking the parent's share" in the light of the Massachusetts decisions.

In *Dodd* v. *Winship,* 144 Mass. 461, 464–465, property was given by will in trust for A for life and, at A's death, to be distributed among her children in equal shares, "the issue of any deceased child to . . . receive their parent's share." It was decided (1) that each child took a vested interest at the death of the testator; (2) that, because no interest in possession or enjoyment would be taken until A's death, it was not "reasonable" to treat the words "the issue of any deceased child" as referring "only to the issue of any child who died before the testator,"[4] and (3) that these words

---

[4] Similarly, it seems unlikely that, in the case before us, the words, "the issue of any deceased child taking the parent's share," were intended only to make certain that issue of grandchildren of the testator who died before him leaving issue would not be deprived of remainder interests. That, we assume, would have been accomplished by G. L. c. 191, § 22 (see amendment by St. 1962, c. 273).

created "a condition subsequent, that if any child died before . . . [A], leaving issue, such issue should take," so that each child of A had a "vested estate liable to be devested . . . if he died before . . . [A] leaving issue." *Lenz* v. *Prescott,* 144 Mass. 505, 506, 514–515, is to similar effect. See *Cotter* v. *Cotter,* 293 Mass. 500, 503–504, where this court recognized the possibility of such a vested remainder, subject to being divested in the event of the death of its holder leaving issue before the date for distribution at the death of the life beneficiary. See also *Boston Safe Deposit & Trust Co.* v. *Park,* 307 Mass. 255, 262–263, where the court spoke of the possibility of a vested class gift, subject to being divested by the death of all members of the class prior to the termination of the trust.

In *Boyd* v. *Bartlett,* 325 Mass. 206, 207, the court considered a gift in trust for E for life and then for twenty-one years for the benefit per capita of the children of R and T, each to receive income until he reached twenty-five (or until the twenty-one year period expired), when the principal was to "be paid over to the children then living . . . or to the issue of any deceased child by right of representation." This court held that each child took a vested share and that the administrator of a child of a nephew who died under twenty-five (during the twenty-one year period) leaving no issue took such child's share. Chief Justice Qua said, however (at p. 211), that the vested interest of that child "[d]oubtless . . . would have been divested in favor of his issue, if he had left issue; but he left none." See *Copp* v. *Worcester County Natl. Bank,* 347 Mass. 548, 551–552. The discussion of the divesting of vested shares in the cases just cited is consistent with that in Restatement: Property, § 254, comment a, illustration 1. See also § 269, comment i; Powell, Real Property, §§ 277, 318; Am. Law of Property, § 21.23; Simes and Smith, Future Interests (2d ed.) §§ 144, 146–149.

*Old Colony Trust Co.* v. *Clemons,* 332 Mass. 535, 539–540, dealt with gifts in trust, after a life interest, to nieces and nephews and to "the issue of any deceased niece or nephew

by right of representation.'' The remainder gifts were treated as indefeasibly vested in the nieces and nephews living at the donor's death, so that the estate of any niece or nephew who died between the death of the donor and the death of the life beneficiary would take the share of such niece or nephew. The original papers, however, reveal that the case was argued almost entirely on the issue whether the remainder interests were vested or contingent prior to the life beneficiary's death. No argument appears to have been made by the issue of deceased nieces and nephews, living at the life beneficiary's death, that they, rather than the estates of their parents, should take their respective parent's shares on the ground that each deceased parent's interest was vested subject to being divested by such parent's death prior to the life beneficiary leaving issue. We see in the *Clemons* opinion no indication that this court considered the question now presented.

We adopt as most consistent with the testator's purpose, so far as indicated, and with the authorities, the construction that Mrs. White and Henry Snelling each took at the settlor's death a defeasible vested remainder interest in Mrs. Fessenden's share subject to open to let in her later born children, if any, and to being divested (1) by Mrs. Fessenden's death without leaving issue then living, or (2) by Mrs. White's or Henry Snelling's own death, leaving issue, prior to receiving their respective shares of principal in possession and enjoyment, or (3) by her or his own death prior to attaining the age of twenty-five, leaving no issue.[5] The second divesting circumstance has occurred. Mrs. White's son is entitled to direct payment of the share formerly held for his mother. Each of Henry Snelling's three sons is entitled to direct payment to him of one-third of the share formerly held for his father.

---

[5] As the share of each such grandchild of the testator was separable from that of any grandchild born after the testator's death (see *Dorr* v. *Lovering*, 147 Mass. 530, 532–536; *Second Bank–State St. Trust Co.* v. *Second Bank–State St. Trust Co.* 335 Mass. 407, 411), the divesting limitation could not take place as to either share at too remote a period under the rule against perpetuities. See Halbach, Vested and Contingent Remainders in Perspectives of Law (Essays for Austin Wakeman Scott) 152, 161–164.

The decree of the Probate Court is reversed. A new decree, consistent with this opinion, is to be entered.

*So ordered.*